# EXHIBIT A

# Mortgage 60/817 (lit)
(Closed-End) (For New Jersey Property)


PNCBANK

THIS MORTGAGE is made on 04/15/2004. The Mortgagor is VICTOR J & PATRICIA A GONZALEZ.
If there is more than one, the word "Mortgagor" herein refers to each and all of them. The Mortgagee is PNC Bank, National Association.
The word "Borrower" means VICTOR J GONZALEZ.
If there is more than one, the word "Borrower" herein refers to each and all of them.

Borrower owes Mortgagee the sum of One Hundred Forty-four Thousand Dollars And Zero Cents
(U.S. $ 144,000.00  ). This debt is evidenced by Borrower's written obligation (referred to herein as the "Note"), dated 04/15/2004.
This Mortgage secures to Mortgagee: (a) the repayment of the debt evidenced by the Note, with interest and other charges as provided therein; (b) the payment of all other sums, with interest thereon, advanced hereunder for the payment of taxes, assessments, maintenance charges, insurance premiums and costs incurred to protect the security of this Mortgage; (c) the payment of all of Mortgagee's costs of collection, including costs of suit and, if permitted by law, reasonable attorneys' fees and expenses, if suit is filed or other action is taken to collect the sums owing or to protect the security of this Mortgage; (d) payment of any refinancing, substitution, extension, modification, and/or renewal of any of said indebtedness, interest, charges, costs and expenses; (e) the performance of Mortgagor's and/or Borrower's covenants and agreements under this Mortgage and the Note; and (f) the repayment of the debt evidenced by any note or agreement which was refinanced by the Note, to the extent that such debt is owed to Mortgagee and has not been paid. For this purpose, Mortgagor does hereby mortgage, grant and convey to Mortgagee the following described property, together with all improvements now or hereafter erected, and all easements, rights and appurtenances thereon, located at and known as:

| 416 LAUREL BROOK DR | BRICK TWP | NJ | 08724 | OCEAN |
| Recording Date | 10/27/2000 | | | |
| Deed Book Number | 10223 | Page Number | 1800 | |
| Tax Parcel Number | N/A | | | |
| Lot and Block Number | 37 755 | | | |

INSTR # 2004093456 OR BK 12044 PG 1425 04/30/2004 10:58:16 AM
CARL W. BLOCK COUNTY CLERK, OCEAN COUNTY NEW JERSEY

The word "Property" herein shall mean all of the foregoing mortgaged property.
To have and to hold the Property unto the Mortgagee, its successors and assigns, forever. Provided, however, that if the Mortgagor and/or Borrower shall pay to Mortgagee the said debt, interest, and all other sums and perform all covenants and agreements secured hereby, then this Mortgage and the estate conveyed by it shall terminate and become void.
Warranty of Title. Mortgagor warrants and represents to Mortgagee that: (a) Mortgagor is the sole owner of the Property, and has the right to mortgage and convey the Property; (b) the Property is unencumbered except for encumbrances now recorded; and (c) Mortgagor will defend the title to the Property against all claims and demands except encumbrances now recorded.
Covenants. Mortgagor promises and agrees as follows:
1. Mortgagor will maintain the Property in good order and repair.
2. Mortgagor will comply with all laws respecting the ownership and/or use of the Property.
3. If the Property is part of a condominium or planned unit development, Mortgagor will comply with all by-laws, regulations and restrictions of record.
4. Mortgagor will pay and/or perform all obligations under any mortgage, lien or security agreement which has priority over this Mortgage.
5. Mortgagor will pay or cause to be paid all taxes and other charges assessed or levied on the Property when due and, upon Mortgagee's request, will deliver to the Mortgagee receipts showing the payment of such charges.
6. While any part of the debts secured by this Mortgage remain unpaid, Mortgagor promises to obtain and keep in force property insurance and, if required by federal law, flood insurance on the Property. The property insurance must cover loss of or damage to the Property and must be in an amount sufficient to protect Mortgagee's interests; flood insurance must be of the type and in the amount required by federal law. Mortgagor agrees to provide Mortgagee evidence of required insurance. All policies must name Mortgagee as a loss payee/secured party and must provide for at least 10 days written notice to Mortgagee of reduction in coverage or cancellation. Mortgagor gives Mortgagee the right to sign Mortgagor's name on any check or draft from an insurance company and to apply the money to any debt secured by this Mortgage. This is limited to checks and drafts in payment of a claim under an insurance policy for loss or damage to the Property or for returned or rebated premiums on policies insuring the Property.
7. If Mortgagor fails to keep in force the required insurance and/or fails to provide evidence of such insurance to Mortgagee, Mortgagee may notify Mortgagor that Mortgagor should purchase the required insurance at Mortgagor's expense. If Mortgagor fails to purchase the insurance within the time stated in the notice and/or fails to provide evidence of such insurance to Mortgagee, Mortgagee may purchase insurance to protect Mortgagee's interest, to the extent permitted by applicable law, and charge Mortgagor the cost of the premiums and any other amounts Mortgagee incurs in purchasing the insurance. THE INSURANCE MORTGAGEE PURCHASES WILL BE SIGNIFICANTLY MORE EXPENSIVE AND MAY PROVIDE LESS COVERAGE THAN INSURANCE MORTGAGOR COULD PURCHASE OTHERWISE. Mortgagee may receive reasonable compensation for the services which Mortgagee provides in obtaining any required insurance on Mortgagor's behalf. In certain states, the required insurance may be obtained through a licensed insurance agency affiliated with Mortgagee. This agency will receive a fee for providing the required insurance. In addition, an affiliate may be responsible for some or all of the underlying insurance risks and may receive compensation for assuming such risks. If Mortgagor fails to perform any other duty or obligation required by these Covenants, Mortgagee may, at its sole option, advance such sums as it deems necessary to protect the Property and/or its rights in the Property under this Mortgage. Mortgagor agrees to repay Mortgagee any amounts advanced in accordance with this paragraph, with interest thereon, upon demand.
8. Any interest payable to Mortgagee after a judgment is entered or on additional sums advanced shall be at the rate provided for in the Note.
9. Mortgagee may make reasonable entries upon and inspections of the Property after giving Mortgagor prior notice of any such inspection.
10. Mortgagor will not sell, transfer ownership in, or enter into an installment sale contract for the sale of all or any part of the Property.
11. The promises, agreements and rights in this Mortgage shall be binding upon and benefit anyone to whom the Property or this Mortgage is transferred. If more than one Mortgagor signs this Mortgage, each and all of them are bound individually and together. The covenants made in this section and Mortgagee's remedies set forth below shall not merge with any judgment entered in any legal action and shall apply until all amounts owed are paid in full.
Default. Mortgagor will be in default under this Mortgage: (a) if there is a default under the Note; (b) if Mortgagor breaks any promise made in this Mortgage; (c) if any Mortgagor dies; (d) if any other creditor tries to take the Property by legal process; (e) if any Mortgagor files bankruptcy or if anyone files an involuntary bankruptcy against any Mortgagor; (f) if any tax lien or levy is filed or made against any Mortgagor or the Property; (g) if any Mortgagor has made any false statement in this Mortgage; or (h) if the Property is destroyed, or seized or condemned by federal, state or local government.
Mortgagee's Remedies. Unless prohibited by law, if Mortgagor is in default under this Mortgage, Mortgagee may, at its option, after notice required by law, if any, declare due and payable the entire unpaid balance of the sums which are secured by this Mortgage and owing upon the Note. If Mortgagee so declares such entire balance due and payable, Mortgagee may take possession of the Property, collect any and all rents, apply said rents to the indebtedness secured by this Mortgage, foreclose the Mortgage, or take other action upon the Mortgage as permitted or provided by law to collect the balance owing.

Book 12044/Page 1425
SEE COMMENTS ON LAST PAGE

**Remedies Cumulative.** If any circumstance exists which would permit Mortgagee to accelerate the balance, Mortgagee may take such action at any time during which such circumstance continues to exist. Mortgagee's remedies under this Mortgage shall be cumulative and not alternative.

**Delay in Enforcement.** Mortgagee can delay in enforcing any of its rights under this Mortgage or the Note without losing that right. Any waiver by Mortgagee of any provision of this Mortgage or the Note will not be a waiver of the same or any other provision on any other occasion.

**Assignment.** Mortgagee may sell, transfer or assign this Mortgage without Mortgagor's consent.

**Severability.** If any provision of this Mortgage is held to be invalid or unenforceable, such determination shall not affect the validity or enforceability of the remaining provisions of this Mortgage.

Mortgagor's Signature: _____  
Print or Type Mortgagor's Name: Victor J Gonzalez

Mortgagor's Signature: Patricia A. Gonzalez  
Print or Type Mortgagor's Name: Patricia A Gonzalez

## Acknowledgment

STATE OF New Jersey  
COUNTY OF Ocean   } ss:

BE IT REMEMBERED, that on this _____ day of April, 2004, before me, a Notary Public in and for the State/Commonwealth of New Jersey, personally appeared Victor J Patricia A Gonzalez who I am satisfied is/are the person(s) named in and who executed the within Mortgage, and who acknowledged that he/she/they executed the same as a voluntary act for the uses and purposes expressed in the Mortgage and desired the same to be recorded.

In Witness Whereof, I set my hand and official seal.

Signature of Notary Public: Robert B. Lesher  
Print or Type Name of Notary Public: Robert B. Lesher  
Title: LPSC

Robert B. Lesher  
Notary Public of New Jersey  
My Commission Expires April 1, 2007

Mail to:  
PNC Bank  
Consumer Loan Center  
Collateral Control  
2730 Liberty Avenue  
Pittsburgh, PA 15222

To  
PNC Bank

From  
VICTOR J & PATRICIA A GONZALEZ

**Mortgage**  
(Closed-End)

Recorded Number

Book12044/Page1426

# Addendum to Direct Installment Loan Note <small>Borrower assistance</small>


**PNCBANK**

| | | | |
|---|---|---|---|
| Name of Borrower(s):<br>Victor J. Gonzalez | Lender:<br>PNC Bank, N.A. | Account Number: | Date of this Addendum:<br>February 16, 2010 |

**Introduction.** Borrower(s) is(are) obligated on the Direct Installment Loan Note identified above (\"Note\"). All of the terms, disclosures and promises in the Note in effect before Borrower signs this Addendum shall continue to apply, except as specifically amended by or as are inconsistent with this Addendum. Unless Lender agrees to this Addendum in the manner indicated below, these changes will not be made. Borrower, by signing at the end, requests Lender to amend the terms of the Note as follows:

1.  **Interest Rate.**
    (a) **Temporary Interest Rate.** During the next **12** months, the Temporary interest rate will be **3.020%** per year.
    (b) **Permanent Interest Rate.** During the remaining months, the Permanent Interest Rate will be determined as set forth in the Note in effect before this Addendum was signed.
2.  **Payment Schedule.**
    (a) **Temporary Payment.** During the months in which the Temporary Interest Rate is in effect, the monthly payment amount will be **$881.73**.
    (b) **Permanent Payment.** In the first month after the Temporary Interest Rate is no longer in effect, Lender will calculate the permanent monthly payment amount so that equal payments will pay the balance in full by the Maturity Date, if all payments are made when due. If checked, ✓ the term of the Note will be extended so that the Maturity Date is **08/17/2022** ; if not checked, the term and Maturity Date will not change.
3.  **Your Responsibilities.** If more than one Borrower has signed this Addendum, all Borrowers are equally responsible, individually and together, for payment in full of the Note and performance of all obligations under the Note.
4.  **Effect of Addendum.** Borrower agrees that the execution of this Addendum does not pay the Note or satisfy, pay or affect the lien of any Mortgage or security agreement securing the Note.
5.  **Effective Date of Addendum.** The amendments set forth in this Addendum shall take effect within a reasonable time after Lender agrees, at Lender's discretion, which may be in the next month.
6.  **Payment Application.** Lender will not use any payment of an amount equal to or less than the monthly payment due in any month to pay any Finance Charge which is accrued and unpaid prior to the date on which this Addendum takes effect, until all other Finance Charges, credit insurance premiums, Late Charges, Annual Fees and Transfer Fees, and the principal balance have been paid.
7.  **Amounts Unpaid on the Maturity Date.** Borrower agrees to pay the monthly payment amount each month until all amounts which are owed and unpaid on the Note have been paid in full, even after the Maturity Date.

EACH OF YOU ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS ADDENDUM AND BY SIGNING THIS ADDENDUM INDICATES YOUR INTENTION TO BE LEGALLY BOUND BY THIS ADDENDUM, INCLUDING THE PARAGRAPHS ON ALL PAGES OF THIS ADDENDUM.

_____  3/8/2010
Borrower's Signature             Date

_____  _____
Borrower's Signature             Date

By signing below, Lender hereby agrees to this Addendum and the changes stated above.

_____  3.12.10
PNC Bank Representative   Officer/Extension   Date

OMACS # ███████

# Direct Installment Loan Disclosure and Note

**PNCBANK**

**Borrower:** VICTOR J GONZALEZ     **Lender:** PNC Bank, National Association     **Date:** 04/15/2004

Items preceded by "☐" are not applicable unless marked "☒" or the equivalent.

## Truth-in-Lending Disclosures

| ANNUAL PERCENTAGE RATE<br>The cost of the Borrower's credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost the Borrower. | Amount Financed<br>The amount of credit provided to the Borrower or on the Borrower's behalf. | Total of Payments<br>The amount the Borrower will have paid after Borrower has made all payments as scheduled. |
|---|---|---|---|
| 5.490 % | $67,550.40 | $144,000.00 | $211,550.40 |

**Itemization of Amount Financed**
Amount Financed
$ See Settlement Statement
(1) Amount given directly to Borrower
$ See Settlement Statement
(2) Amount paid on Borrower's account
$ See Settlement Statement
(3) Amount retained by Lender for
$ See Settlement Statement
(4) Amount paid to others on Borrower's behalf:
(a) to public officials
$ See Settlement Statement
(b) for credit insurance
$
(c) to See Settlement Statement
$
(d) to
$
(e) to
$
(f) to
$
(g) to
$
(h) to
$
(i) to
$

**Prepaid Finance Charge**
$ See Settlement Statement

**Itemization of Amounts paid by Borrower at the time the loan is made:**
(1)
$ See Settlement Statement
(2)
$
(3)
$

The Borrower's **Payment Schedule** will be:    When Payments Are Due    e means an estimate

| Number of Payments | Amount of Payments | Monthly, beginning |
|---|---|---|
| 180 | $ 1,175.28 | 05/17/2004 |

**Security:** Lender is getting a security interest in deposits or property held by Lender, and:
☐ None.    ☐ Goods or property being purchased.
☒ Real Estate.

In addition, collateral (other than Borrower's principal residence) securing other obligations to Lender may also secure this Note.
**Security Interest Charges:**
☐ None    ☒ Filing Fees $ 40.00

**Variable Rate:** ☐ Not Applicable.
☒ This loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.
☐ The Annual Percentage Rate may increase if the Prime Rate published in *The Wall Street Journal* increases. The rate will not increase more often than once a month. The rate will not increase more than one percentage point in any one month and will not increase more than five percentage points during the term of the loan. The rate will never increase beyond 18%. Any increase in the rate as a result of an increase in the index may cause the number of payments to increase, and/or:
☐ the amount of the final payment to change. The final payment will never be increased to more than 150% of the regular payment. For example, if your loan were for $10,000.00 at an initial rate of 13 1/2%, repayable in 48 monthly payments of $270.76, and the rate increased to 14 1/2% after 12 payments, increased to 15 1/2% after the next 12 payments, and then remained the same for the term of the loan, you would be required to pay one additional payment of $254.88.
☐ the amount of the payments to change. The amount of the payments may increase every four years. The final payment will never be increased to more than 150% of the regular payment. For example, if your loan were for $10,000.00 at an initial rate of 13 1/2%, repayable in 72 monthly payments of $203.39, and the rate increased to 14 1/2% after 12 payments, increased to 15 1/2% after the next 12 payments, and then remained the same for the term of the loan, the payment amount would increase to $227.12 for the 49th through the 72nd payments.
☐ If Borrower's participation in the automatic payment plan is discontinued for any reason, the Automatic Payment Plan Discount of ___ percentage points will terminate and may cause the rate to increase. Any increase in the rate will cause the amount of the payments to increase. For example, if your loan were for $10,000.00 at an initial rate of 13 1/2%, repayable in 48 monthly payments of $270.76, and the Discount terminated after 12 payments, the payment amount would increase to $ ___ for the remainder of the term of the Note. (The payment example assumes Borrower has not elected to purchase Credit Insurance.)
☐ If Borrower's participation in the Club or Package Plan is discontinued for any reason, the Club Discount of ___ percentage points will terminate and may cause the rate to increase. Any increase in the rate will cause the amount of the payments to increase. For example, if your loan were for $10,000.00 at an initial interest rate of 13 1/2%, repayable in 48 monthly payments of $270.76, and the Club Discount terminated after 12 payments, the payment amount would increase to $ ___ for the remainder of the term of the Note. (The payment example assumes Borrower has not elected to purchase Credit Insurance.)
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

**Late Charge:** ☐ Not Applicable. ☒ If a payment is not made within 15 days of its due date, Borrower may be charged the greater of $10.00 or 5% of the total amount of the payment which was not paid in full.
**Prepayment:** If Borrower pays off early, Borrower will not have to pay a penalty.
**Required Deposit Balance:** ☒ Not Applicable. ☐ The Annual Percentage Rate does not take into account any required deposit balance.
**Assumption:** If this loan is secured by a dwelling, someone purchasing that dwelling cannot assume the remainder of the loan on the original terms.

**Credit Insurance Is Not Required. Borrower May Cancel Credit Insurance at Any Time Without Penalty.** Credit Life Insurance and Credit Disability Insurance are not required to obtain credit, and will not be provided unless Borrower signs below and agrees to pay the additional cost(s). Insurance may be purchased on the life of one or two Borrowers. Credit Disability Insurance may be purchased on only one Borrower. If obtained through Lender the cost of the insurance for the original term of the credit is stated below. A portion of the cost may be retained by or paid to the Lender. "Borrower" who is insured may not be a Co-Maker.

I want Single Credit Life Insurance which costs $ _____
Signature of Person to be insured for Single Credit Life Insurance _____

I want Single Credit Disability Insurance which costs $ _____
Signature of Person to be insured for Single Credit Disability Insurance _____

We want Joint Credit Life Insurance which costs $ _____
1. _____    2. _____
Signatures of Persons to be insured for Joint Credit Life Insurance

Borrower does not desire or is not eligible for credit insurance: _[signature]_
Signature of Borrower

Notice to Borrower(s): The maximum amount of coverage which insured Borrower(s) will receive is set forth in the certificate or policy, as applicable.

**Direct Loan Note Index.** The index is for convenience and reference. It shall not limit the meaning or scope of any paragraph or section. The numbers refer to the paragraph numbers of the Note which begins on page two.

| | | |
|---|---|---|
| Acceleration of the outstanding balance ... 13 | Daily balance ... 4,8 | Margin ... 4 |
| Application of payments ... 9 | Daily interest rate ... 4,8 | Monthly payment ... 3,7 |
| Assignment ... 23 | Default ... 13 | Monthly payment changes ... 7 |
| Attorneys' commissions ... 2,21 | Definitions ... 1 | Multiple parties ... 25 |
| Automatic payment plan ... 5 | Delay in enforcement ... 15 | Paid in full checks ... 27 |
| Borrower's responsibilities ... 2,13,25,26,29 | Deposits ... 22 | Payment application ... 9 |
| Changes in interest rate ... 4,5,6,7,12 | Disputed debts ... 27 | Payment due date ... 3 |
| Closing costs ... 2 | Early payment ... 8,18 | Payment schedule ... 3,7 |
| Club or Package Plan ... 6 | Finance charges ... 2,4,8 | Personal representatives bound ... 26 |
| Collateral ... 19,22 | Flood insurance ... 19 | Prepayment ... 18 |
| Collection expenses ... 2,21 | Heirs bound ... 26 | Promise to pay ... 2 |
| Communication concerning disputed debts ... 27 | Index ... 4 | Property insurance ... 19 |
| Computing interest ... 8 | Insurance ... 24 | Release of borrowers ... 16 |
| Court costs ... 2,21 | Insurance checks ... 20 | Release of security ... 16 |
| Credit Insurance ... 24 | Interest after maturity and judgment ... 12 | Remedies ... 13 |
| Credit Reports ... 28 | Interest rate ... 2,4,5,6,7,8,12 | Security interest ... 19 |
| | Late charges ... 2,10 | Security interest charges ... 17 |
| | Legal fees ... 2,21 | Security interest in deposits ... 22 |
| | Lender ... 1 | Variable rate ... 4,5,6 |
| | Lender's right to endorse checks ... 20 | Waiver ... 11,14,16 |

NJ/PHL
EFORM108170-0102

Original

# Direct Installment Loan Disclosure and Note

**Borrower:** VICTOR J GONZALEZ  **Lender:** PNC Bank, National Association  **Date:** 04/15/2004

---

**Direct Installment Loan Note**

**1. Definitions.** In this Note, the word "Borrower" means each and all of those who sign this Note and each and all of those who endorse the check which disburses the "Amount given directly to Borrower."
The word "Lender" means PNC Bank, National Association or any person to whom this Note has been transferred.

**2. Borrower's Promise to Pay.** To repay this loan, Borrower promises to pay to Lender $ 144,000.00 , with interest on the unpaid balance from the date funds are advanced until paid in full. Interest shall be paid at the rate per annum of 5.490 %. Borrower promises to make payments in accordance with the payment schedule stated in this Note. Borrower promises to pay to Lender all other amounts which may become due under the terms of this Note, including, if applicable, Credit Insurance Premiums, Late Charges and Costs of Collection. Borrower agrees to make payments at the place designated by Lender. Borrower may also be required to pay to Lender certain other charges before Lender will give any money to Borrower. These charges, if any, are stated on page one in "Itemization of Amounts paid by Borrower at the time the loan is made" and/or the Settlement Statement.

**3. Payment Schedule.** Borrower agrees to pay to Lender the amounts due under this Note:
[X] in uninterrupted monthly payments: 179 payments of $ 1,175.28 and a final payment, which will be billed by Lender, of all remaining unpaid amounts. Payments will be due on the same day of each month starting on 05/17/2004.
Payments will continue until all amounts due are paid.
[ ] in uninterrupted monthly payments, except for the months shown:
   payments of $         and a final payment, which will be billed by the Lender, of all remaining unpaid amounts. Payments will be due on the same day of each month starting on         , PROVIDED, HOWEVER, that no payments shall be due during the months of            ,                 or            each year.
[ ] in a single payment of $         plus accrued interest and all other amounts due on         .
[ ] In addition, prior to the month of the first scheduled payment as stated above, interest shall be payable monthly on the unpaid balance and shall be due on the same day of the month as the later payments.
The date that the final payment is scheduled in this paragraph to be due is called the "Maturity Date" of this Note. If Borrower elects to purchase Credit Insurance and then elects to cancel the Credit Insurance, the Payment Schedule may change as described in the "Credit Insurance" paragraph.

**4. Variable Rate.** [X] Not Applicable. [ ] The interest rate on this Note can change based on changes in the Interest Rate Index ("Index"). The rate will be based on the Margin, the Index, and applicable discounts, if any. The Index may change from time to time; the Margin will remain the same for the term of the Note. The interest rate stated in the "Borrower's Promise to Pay" is the "Base Rate." The Base Rate was computed by adding the Margin to the original Index, and then subtracting the Automatic Payment Plan Discount and/or the Club Discount, if applicable. Interest rate adjustments are computed by adding the Margin to the current Index at the time of the adjustment (subject to the limitations described below), and then subtracting the Automatic Payment Plan Discount and/or the Club Discount, if applicable. The interest rate on this loan may be adjusted monthly, on the first calendar day of each calendar month, beginning in the month after the funds are advanced. The Margin is         percentage points. The Index is the highest prime rate published in the "Money Rates" section of *The Wall Street Journal* ("Prime Rate") on the last day on which the Prime Rate is published in the preceding calendar month. The Index is not necessarily the lowest rate charged by Lender on loans. If the Index shall cease to be available, Lender will select a new index, which, in Lender's sole opinion upon a reasonable basis, is comparable to the Index. The annual interest rate will not increase or decrease more than one percentage point in any calendar month, and will not increase or decrease more than five percentage points during the term of the loan, due to changes in the Index. (A change caused by a termination of the Automatic Payment Plan Discount or the Club Discount is not subject to the limitations set forth in the previous sentence.) The annual interest rate will not exceed 18%.

**5. Automatic Payment Plan.** [ ] Not Applicable. [X] Borrower authorizes Lender to deduct the payments on this loan from Borrower's deposit account number 8020271576 on each scheduled payment due date. The interest rate on this loan may increase by 0.250 percentage points ("Automatic Payment Plan Discount") if participation in the automatic payment plan is discontinued for any reason, including: (a) if any Borrower chooses to terminate participation; (b) the deposit account identified above is closed; or (c) if there are not sufficient funds in the account to make the full monthly payment on three payment dates.

**6. Club or Package Plan.** [ ] Not Applicable. [X] Borrower is participating in the package of banking services known as, or is a qualified member of a club group known as: PREMIUM . The interest rate on this Note may increase by 0.250 percentage points ("Club Discount"), if participation in this Package Plan or Club Group is discontinued for any reason.

**7. Monthly Payment Changes.**
[ ] The payment amounts will not change over the term of the loan except as stated in the "Payment Schedule."
[X] The payment amounts may increase (but will not decrease) if Borrower terminates participation in the [X] Club or Package Plan [X] Automatic Payment Plan. Lender will determine the amount of equal monthly payments that would be sufficient to repay in full, by the Maturity Date, the unpaid principal balance that is expected to be due on the payment change date, at the new interest rate. If the payment amount will increase, Lender will notify Borrower of the effective date and amount of the new payment.
[ ] Changes in the interest rate may cause the number of payments to change and/or the amount of the final payment to change. One month before the Maturity Date, if necessary, the number of payments due will increase so that the final payment will not be more than 150% of the previously scheduled monthly payment.
[ ] Changes in the interest rate may cause the number of payments to increase and/or the amount of the payments to increase; the first change in the payment amount may occur on a date 48 months after the due date of the first monthly payment; subsequent changes, if applicable, will occur every 48 months thereafter. Not more than 45 days, but not less than 25 days, before the date of each payment change, Lender will calculate the new payment amount. The payment amount may increase but will not decrease, except for the final payment. Lender will determine the amount of equal monthly payments that would be sufficient to repay in full, by the Maturity Date, the unpaid principal balance that is expected to be due on the payment change date, at the interest rate in effect at the time the calculation is being made. Lender will notify Borrower of the new amount of the payment which is due. One month before the Maturity Date, if necessary, the number of payments due will increase so that the final payment will not be more than 150% of the previously scheduled monthly payment.

**8. Computing Interest.** Interest is charged on a daily basis, according to the outstanding balance subject to interest on each day of the loan term. The daily interest rate is equal to the annual interest rate in effect on that day divided by the number of days in that calendar year. Borrower agrees that because interest is calculated on a daily basis, late payments will result in additional interest (and, if applicable, a late charge); early payments will result in less interest being charged. If the interest rate on this Note will not change because of changes in the Index (see the "Variable Rate" section), early and/or late payments will cause the amount of the final payment to change. If the interest rate on this Note can change because of changes in the Index (see the "Variable Rate" section), early and/or late payments will cause the number of payments due, the amount of the payments (if the amount of the payments is subject to change every 48 months) and/or the amount of the final payment to change.

**9. Application of Payments.** Lender will apply payments in the following order of priority: credit insurance premiums, if any, interest, late charges, fees, and then principal. All regular payments will be applied to the satisfaction of scheduled payments in the order in which they become due.

**10. Late Charge.** [ ] Not Applicable. [X] Borrower agrees that Lender may assess a late charge for any payment not paid in full within 15 days of its due date. The late charge will be the greater of $10.00 or 5% of the total amount of the payment which was not paid in full. No late charge will be due, however, if the reason that the payment is late is either: (a) attributable to a late charge assessed on a prior payment; or (b) because, after default by Borrower, the entire outstanding balance on this Note is due. No more than one late charge will be imposed for any single scheduled payment.

**11. Waiver by Lender.** If Borrower has made or makes in the future another loan agreement with Lender, Lender might obtain a security interest in the principal dwelling of Borrower or someone else to secure that other loan agreement. That security agreement may provide that the principal dwelling secures not only that other loan agreement but also all other loan agreements of Borrower with Lender. Lender waives (gives up) any right to claim a security interest in the principal dwelling of any person to secure this Note unless the security interest is specifically given to secure this Note.

**12. Interest After Maturity and Judgment.** Unless prohibited by applicable law, interest at the rate provided in this Note shall continue to accrue on the unpaid balance until paid in full, even after (whether by acceleration or otherwise) maturity, and/or if Borrower becomes a debtor in an action filed under the Bankruptcy Code and/or if judgment is entered against Borrower for the amounts due. If at any time interest as provided for in this paragraph is not permitted by law, interest shall, in that event and at that time, accrue at the highest rate allowed by applicable law. If the interest rate on this Note can change, the interest rate which will apply beginning on the date a lawsuit is filed by Lender shall be the interest rate in effect on that date or the interest rate stated in the "Borrower's Promise to Pay," whichever is less.

**13. Default.** (As used in this paragraph, the term "Borrower" includes Borrowers, Co-Makers, Guarantors, sureties, and any owner of property which is security for this Note.) Borrower will be in default:
   (a) if Borrower does not make any payment before or on the date it is due; or
   (b) if Borrower fails to keep any promise made in this Note or defaults in any other note, loan or agreement with Lender; or
   (c) if anyone who signs the security agreement or a mortgage securing this Note breaks any promise made in the security agreement or mortgage; including but not limited to the promise not to sell, give away or transfer title to the property which is the subject of the mortgage or security interest; or
   (d) if any property in which Lender has obtained a security interest to secure this Note is lost, stolen (and not recovered within a reasonable time) or destroyed; or
   (e) if Borrower has made any untrue statement or misrepresentation in the credit application or any other certificate or document given or made for this loan; or
   (f) upon the death of Borrower or any one of them, if there is more than one; or
   (g) if Borrower provides Lender with false information or forged signatures at any time; or
   (h) if a court with proper jurisdiction to do so finds that Borrower, or any one of them, is incapacitated.

If Borrower is in default, the entire outstanding balance on this Note shall be immediately due, at the option of the Lender. This will happen without any prior notice to Borrower, or right to cure, except as may be required by law.

Borrower will also be in default:
   (i) if Borrower becomes insolvent and/or cannot pay Borrower's debts as they become due; or
   (j) if any other creditor tries by legal process to take any money or property of Borrower in the Lender's possession; or
   (k) if Borrower files a bankruptcy petition or if anyone files an involuntary bankruptcy against Borrower; or
   (l) if Borrower makes an assignment for the benefit of creditors, or any insolvency, reorganization, arrangement, debt adjustment, receivership, trusteeship, liquidation or other legal or equitable proceedings are instituted by or against Borrower; or
   (m) if any judgment, tax lien, municipal charge or tax levy is filed or writ of execution is issued against Borrower.

If any event described in (i), (j), (k), (l) or (m) happens, the entire outstanding balance on this Note shall be immediately due without any prior notice to Borrower, or right to cure, except as may be required by law.

A default by Borrower on this Note is a default on every other note, loan or agreement of Borrower with Lender.

# Direct Installment Loan Disclosure and Note

**PNCBANK**

Borrower: VICTOR J GONZALEZ    Lender: PNC Bank, National Association    Date: 04/15/2004

---

## Direct Installment Loan Note — continued

**14. General Waiver Provisions.** Borrower waives presentment for payment, demand, protest, notice of protest, dishonor and all other notices or demands in connection with the delivery, acceptance, performance, default or enforcement of this Note. Borrower further waives any right to require due diligence in collection by Lender.

**15. Delay in Enforcement.** Lender can delay enforcing any rights under this Note without losing any rights. Lender's failure to enforce any right under this Note shall not act as a waiver of that right or preclude the exercise of that right in the event of a future occurrence of the same event. Lender can also extend the time allowed for making payments, and such extension shall not affect the obligations of any Borrower, whether or not that Borrower is given notice of the extension.

**16. Release of Some Borrowers or Some Security.** If there is more than one Borrower, each agrees to remain bound by this Note, although Lender may release any other Borrower or release or substitute any property which is security for the repayment of this Note. Borrower waives all defenses based on suretyship and impairment of collateral or security.

**17. Security Interest Charges.** Borrower agrees to pay any recording, filing, satisfaction and encumbrance fees which may be charged. The charges are to repay Lender for the fees paid to public officials to protect, continue, or release any security interest given in the security agreement or mortgage.

**18. Prepayment.** Borrower may prepay, in full or in part, the amount owed on this Note at any time without penalty. If Borrower prepays the loan in part, Borrower agrees to continue to make regularly scheduled payments until all amounts due under this Note are paid.

**19. If Lender Obtains a Security Interest to Secure Borrower's Payment of this Note, Borrower Makes the Following Additional Promises to Lender:**
(a) if property insurance is required by a mortgage and/or security agreement securing the repayment of this Note and/or if flood insurance is required by federal law, BORROWER MAY OBTAIN THE INSURANCE FROM ANYONE OF BORROWER'S CHOICE subject to Lender's reasonable approval. If flood insurance is required, Borrower has been separately notified. To the extent permitted by applicable law, the property insurance must cover loss of or damage to the collateral and must be in an amount sufficient to protect Lender's interests; flood insurance must be of the type and in the amount required by federal law;
(b) Borrower agrees to provide Lender evidence of required insurance. All policies must name Lender as a loss payee/secured party and must provide for at least 10 days written notice to Lender of reduction in coverage or cancellation;
(c) if Borrower fails to keep in force the required insurance and/or fails to provide evidence of such insurance to Lender, Lender may notify Borrower that Borrower should purchase the required insurance at Borrower's expense. If Borrower fails to purchase the insurance within the time stated in the notice and/or fails to provide evidence of such insurance to Lender, Lender may purchase insurance to protect Lender's interest, to the extent permitted by applicable law, and charge Borrower the cost of the premiums and any other amounts Lender incurs in purchasing the insurance. THE INSURANCE LENDER PURCHASES WILL BE SIGNIFICANTLY MORE EXPENSIVE AND MAY PROVIDE LESS COVERAGE THAN INSURANCE BORROWER COULD PURCHASE OTHERWISE. Upon demand, Borrower promises to pay Lender the cost of insurance purchased and other amounts incurred by Lender. Borrower agrees that Lender may, if permitted by applicable law, add the cost of the insurance to the amounts on which interest is charged at the rate provided in this Note. Lender may receive reasonable compensation for the services which Lender provides in obtaining any required insurance on Borrower's behalf. In certain states, the required insurance may be obtained through a licensed insurance agency affiliated with Lender. This agency will receive a fee for providing the required insurance. In addition, an affiliate may be responsible for some or all of the underlying insurance risks and may receive compensation for assuming such risks. If additional information is required concerning insurance or our affiliate arrangements, please contact Centralized Customer Assistance, 2730 Liberty Avenue, Pittsburgh, PA 15222;
(d) to pay all taxes due on the collateral. If Borrower does not pay the taxes, Lender has the option to pay the taxes. Upon demand, Borrower promises promptly to repay to Lender any amounts paid by Lender for taxes;
(e) if Lender gets a security interest in stock or securities, the value of the collateral may become insufficient to protect Lender. If that happens, Borrower agrees to deliver to Lender additional collateral which Lender believes will be enough to protect Lender;
(f) to allow Lender the right to inspect the collateral at any reasonable time, and to maintain the collateral in good condition and repair; reasonable wear and tear excepted;
(g) if amounts are advanced by Lender under this Note for taxes and/or insurance, Lender may, at its option, if permitted by applicable law, add the amounts so advanced to the outstanding balance and require repayment with interest by increasing the installment payments so that the outstanding principal balance is repaid in full in substantially equal installments on the due date stated in the payment schedule; and
(h) Borrower's promises made and Lender's rights set forth in this section shall not merge with any judgment in any legal action and shall apply until all amounts owed are paid in full.

**20. Lender May Sign Borrower's Name to Insurance Checks.** Borrower gives Lender the right and power to sign Borrower's name on any check or draft from an insurance company. This is limited to a check or draft in payment of returned premiums, benefits under credit life insurance or credit disability insurance, and claims made under physical damage insurance and flood insurance covering property which is security for this loan. Borrower does not have the right to, and agrees that Borrower will not, revoke the power of Lender to make Borrower's endorsement. Lender may exercise the power for Lender's benefit and not for Borrower's benefit, except as otherwise provided by law.3

**21. Costs of Collection.** If Borrower is in default under this Note and Lender files suit, or takes other action to collect this loan or protect any collateral, Borrower agrees to pay costs of suit and, if permitted by law, reasonable attorneys' fees and expenses, including post-judgment attorneys' fees.

**22. Security Interests in Deposits.** The Lender may set-off any amounts due and unpaid under this loan against any of Borrower's money on deposit with Lender. This includes any money which is now or may in the future be deposited with Lender by Borrower or with any co-depositor, including Borrower's spouse. This also includes any property, credits, securities, or money of the Borrower, which may at any time be delivered to or in the possession of the Lender. This may be done without any prior notice to Borrower.

**23. Assignment.** Borrower may not assign or otherwise transfer his rights under this Note to anyone else. Lender may sell, transfer, or assign this Note, and any security agreement and/or mortgage given to secure this Note, and Borrower's rights and obligations under this Note will continue unchanged.

**24. Credit Insurance.** If Borrower has elected to purchase credit insurance, Borrower may cancel that insurance at any time without penalty. In the event of cancellation, the payment amounts shown in the "Payment Schedule" will not decrease; rather, the loan will be paid off more quickly since more of the payment will be directed to payment of the principal balance of the loan.

**25. Multiple Parties.** If there is more than one Borrower, each agrees to be responsible to Lender, individually and together, for payment in full of this loan. Borrowers agree that payment of all or part of the proceeds of this Note to any Borrower or to anyone else at the direction of any Borrower will be the equivalent of payment to each Borrower and for the benefit of all Borrowers.

**26. Heirs and Personal Representatives Bound.** The provisions of this Note shall be binding upon the Borrower, and the heirs and personal representatives of the Borrower.

**27. Communication Concerning Disputed Debts.** ALL COMMUNICATIONS BY BORROWER TO LENDER CONCERNING DISPUTED DEBTS, INCLUDING AN INSTRUMENT TENDERED AS FULL SATISFACTION OF THE LOAN, SHOULD BE SENT TO CENTRALIZED CUSTOMER ASSISTANCE, 2730 LIBERTY AVENUE, PITTSBURGH, PA 15222.

**28. Credit Reports.** BORROWER AUTHORIZES LENDER TO OBTAIN CREDIT REPORTS ON BORROWER FROM TIME TO TIME AT LENDER'S DISCRETION WHILE BORROWER HAS A LOAN OUTSTANDING WITH LENDER.

**29. BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETELY FILLED-IN COPY OF THIS NOTE AND DISCLOSURE. BY SIGNING BELOW, BORROWER AGREES TO BE LEGALLY BOUND BY ALL THE TERMS AND CONDITIONS OF THIS NOTE.** Each of the Borrowers guarantees that the signature of any Borrower is genuine.

X _[signature]_    4/15/04
Borrower's Signature  VICTOR J GONZALEZ    Date

_____    _____
Borrower's Signature    Date

**30. CO-MAKERS SEE NOTICE TO CO-SIGNER BELOW.** Any Borrower who is designated as a Co-Maker agrees to be equally responsible with all other Borrowers for the payment of this loan and performance of all promises in this Note.

_____    _____
Co-Maker's Signature    Date

_____    _____
Co-Maker's Signature    Date

---

### NOTICE TO CO-SIGNER

You are being asked to guarantee this debt. Think carefully before you do. If the Borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the Borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The Lender can collect this debt from you without first trying to collect from the Borrower. The Lender can use the same collection methods against you that can be used against the Borrower, such as suing you, etc. If this debt is ever in default, that fact may become a part of *your* credit record.

Original



# Ocean County
## Document Summary Sheet

OCEAN COUNTY CLERK
PO BOX 2191
COURTHOUSE
TOMS RIVER NJ 08754

INSTR # 2014025901
OR BK 15774 PG 89
RECORDED 03/31/2014 01:56:19 PM
SCOTT M. COLABELLA, COUNTY CLERK
OCEAN COUNTY, NEW JERSEY
RECORDING FEES 120.00

Official Use Only

| Transaction Identification Number | |
|---|---|
| Submission Date (mm/dd/yyyy) | 03/31/2014 |
| No. of Pages (excluding Summary Sheet) | 9 |
| Recording Fee (excluding Transfer tax) | $120.00 |
| Realty Transfer Tax | $0.00 |
| Total Amount | $120.00 |
| Document Type | MORTGAGE MODIFICATION |

Return Address  (for recorded documents)
TITLE FIRST AGENCY, INC.
2944 FULLER AVENUE NE, SUITE 200
GRAND RAPIDS, MI 49505

**Municipal Codes**
BRICK TOWNSHIP    7

**Batch Type**
L2 - LEVEL 2 (WITH IMAGES)

Bar Code(s)

Additional Information (Official Use Only)

*This is not a certified copy*

\* DO NOT REMOVE THIS PAGE.
COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF OCEAN COUNTY FILING RECORD.
RETAIN THIS PAGE FOR FUTURE REFERENCE.

Page 1 of 2



# Ocean County
## Document Summary Sheet

**MORTGAGE MODIFICATION**

| | |
|---|---|
| Type | MORTGAGE MODIFICATION |
| Consideration | |
| Submitted By | SIMPLIFILE, LLC. (SIMPLIFILE) |
| Document Date | 03/20/2014 |

### Reference Info

| Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date |
|---|---|---|---|---|
| OR | 12044 | 1425 | 04/30/2004 | |

### MORTGAGOR

| Name | Address |
|---|---|
| VICTOR J GONZALES | |

### MORTGAGEE

| Name | Address |
|---|---|
| PNC MORTGAGE A DIVISION OF PNC BANK NA | |

### Parcel Info

| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
|---|---|---|---|---|---|
| | | | | | |

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF OCEAN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

Page 2 of 2

DOC_TYPE MTG MOD BK 15774 PG 90 PAGE 2 OF 11

*This is not a certified copy*

Investor Loan # ███████
HELOC LOAN
This document was prepared by
PNC Mortgage
3232 Newmark Dr.
Miamisburg, OH 45342
888-719-4789

After Recording Return To:
Title First Agency
National Operations, Attn: Post Closing
2944 Fuller Ave. NE, Suite 200
Grand Rapids, MI 49505

_____[Space Above This Line For Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Date Prepared: MARCH 12, 2014
Borrower ("I"): VICTOR J GONZALES
Lender or Servicer ("Lender"): PNC Mortgage, a division of PNC Bank, NA Successor By Merger with National City Mortgage Co.
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 04/15/2004
Loan Number ███████  Mortgage being Modified Dated 4/15/2004 and
Recorded 4/30/2004 in B: 12044 and P: 1425
Property Address:
416-D LAUREL BROOK DRIVE, BRICK, NJ 08724
Tax Parcel Number: 755 37 C1404

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3157    3/09  (rev.10/10 )  (page 1 of 7 pages)

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B. One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

    C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

    D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

    E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

    G. I have made or will make all payments required under a trial period plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    B. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 04/01/2014 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on 04/01/2014.

    A. The new Maturity Date will be: 03/01/2054.

    B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $101,801.46 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT           Form 3157    3/09   (rev.10/10) *(page 2 of 7 pages)*

this Agreement.

C. Interest at the rate of **4.875%** will begin to accrue on the New Principal Balance as of 03/01/2014 and the first new monthly payment on the New Principal Balance will be due on 04/01/2014. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| [40] | 4.875 | 03/01/14 | $482.49 | $318.81, may adjust periodically | $801.30, may adjust periodically | 04/01/14 | 480 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

This is not a certified copy

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3157    3/09 (rev. 10/10) (page 3 of 7 pages)

CFN 2014025901 O  DOC_TYPE MTG MOD BK 15774 PG 93 PAGE 5 OF 11

4. **Additional Agreements.** I agree to the following:

   A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

   B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

   C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

   D. Funds for Escrow Items. I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.
   Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.
   The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3157    3/09 (rev. 10/10) *(page 4 of 7 pages)*

Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to

make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3157    3/09 (rev. 10/10) (page 5 of 7 pages)

CFN 2014025901 O  DOC_TYPE MTG MOD BK 15774 PG 95 PAGE 7 OF 11

withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3157    3/09 (rev. 10/10) *(page 6 of 7 pages)*

CFN 2014025901 O   DOC_TYPE MTG MOD BK 15774 PG 96 PAGE 8 OF 11

Case 19-24459-KCF    Doc 7-2    Filed 08/19/19    Entered 08/19/19 17:27:18    Desc
Exhibit Loan Documents    Page 16 of 18

In Witness Whereof, the Lender and I have executed this Agreement.

PNC Mortgage, a division of PNC Bank, NA
Lender

By: _____
Mortgage Officer

Date: 3/25/14

Borrower VICTOR J GONZALES  (Seal)

3/20/2014  Date

_____ (Seal)
Borrower-

_____ Date

_____ [Space Below This Line For Acknowledgement] _____

*This is not a certified copy* (watermark)

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3157    3/09 (rev. 10/10) (page 7 of 7 pages)

DOC_TYPE MTG MOD BK 15774 PG 97 PAGE 9 OF 11

Certificate of Acknowledgement
By Individuals-

State of New Jersey
County of Ocean

On this the 20th day of March, 2014, before me, the undersigned Notary Public, personally appeared Victor J. Gonzales, proven to me on the basis of satisfactory evidence to be the person(s) whose name(s) was/were subscribed to the written instrument, and acknowledged that he/she/they executed it.
WITNESS my hand and official seal.

In witness whereof, I hereunto set my hand and official seal.

Notary Public: _____ Ocean New Jersey
My Commission Expires: 05/22/2016

Vivian Nelson
Notary Public
My Commission Expires 5/22/2016

By a Corporation-

State of Ohio
County of Montgomery

On this, the 25 day of March, 2014, before me, the undersigned Notary Public, personally appeared Dianna Fank who acknowledged himself/herself to be the Mortgage Officer, of PNC Mortgage, a division on PNC Bank, NA,, and that he/she as such Mortgage Officer, being authorized to do so, executed the foregoing instrument for the purpose therein contained by signing the name of the corporation by herself as Mortgage Officer.

Any deed, conveyance, mortgage or other instrument in writing made and executed by a corporation, may be acknowledged by any officer of said corporation whose signature appears on such deed, conveyance, mortgage or other instrument in writing in execution or in attestation of the extension thereof.

In witness whereof, I hereunto set my hand and official seal.

Notary Public: Brenda Williams
My Commission Expires: 2/26/19

[Notary Seal: BRENDA WILLIAMS, NOTARY PUBLIC, COMM. EXP. FEBRUARY 26, 2019, STATE OF OHIO]

"This is not a certified copy"

DOC_TYPE MTG MOD BK 15774 PG 98 PAGE 10 OF 11

EXHIBIT A

ALL THAT CERTAIN LOT, TRACT OR PARCEL OF LAND AND PREMISES SITUATE, LYING AND BEING IN THE TOWNSHIP OF BRICK, COUNTY OF OCEAN AND STATE OF NEW JERSEY AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS

ALL THE FOLLOWING DESCRIBED REAL PROPERTY, WITH THE IMPROVEMENTS AND APPURTENANCES THEREUNTO BELONGING, IN FEE SIMPLE, SUBJECT TO THE PROVISIONS OF THE CONDOMINIUM ACT OF THE STATE OF NEW JERSEY N.J.S.A. 46:8B-1 ET SEQ., ITS AMENDMENTS AND SUPPLEMENTS AND TO THE CREATING, DEFINING AND DELINEATING OF CONDOMINIUM UNITS IN A MASTER DEED DATED APRIL 20, 1972, RECORDED APRIL 24, 1972, IN BOOK 1203 PAGE 298 AND LYING AND BEING IN THE TOWNSHIP OF BRICK, COUNTY OF OCEAN AND STATE OF NEW JERSEY

BEING KNOWN, DEFINED, DELINEATED AND DESIGNATED AS UNIT 14D IN "LAUREL BROOK, A CONDOMINIUM", AS DEFINED AND DELINEATED IN SAID MASTER DEED AND INCLUDING A GARAGE AND DRIVEWAY AND .72551391 PERCENTAGE OF INTEREST IN COMMON AND LIMITED ELEMENTS.

PPN: ███████████████████
VICTOR J. GONZALEZ AND PATRICIA A. GONZALEZ

416 LAUREL BROOK DRIVE, BRICK NJ 08724
Loan Reference Number :
First American Order No:
Identifier:

DOC_TYPE MTG MOD BK 15774 PG 99 PAGE 11 OF 11